UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE A. BLAND; MICHAEL BLAND,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CARONE FAMILY TRUST, *et al.*,<br><br>    Defendants. | Civil No. 07-CV-418-L(RBB)<br><br>**ORDER GRANTING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER [doc. #11]; REQUIRING THE POSTING OF A BOND; SETTING BRIEFING ON PRELIMINARY INJUNCTION; and SETTING PRELIMINARY INJUNCTION HEARING** |

Plaintiffs filed this action on March 6, 2007, alleging violations of the Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act of 1994 ("HOEPA"). Plaintiffs seek a TRO to prevent a foreclosure sale of their home on March 20, 2007 by defendants.

**Factual and Procedural Background**

Plaintiffs entered into a consumer credit transaction ("Transaction") to refinance their principle dwelling/residence located at 14236 Caminito Vistana, San Diego ("plaintiffs' home") with Pitkin Hopkins, Inc. in the amount of $430,000.00 secured by a deed of trust of plaintiffs' home and deeds of trust against four other properties owned by plaintiffs.[1] The Transaction refinanced, *inter alia*, an existing purchase money loan secured by plaintiffs' home held by Home Equity Funding.

---

[1] The four other properties are located at 13333 Powers Road, Poway; 15590 Paseo Ajanta, San Diego; 12852 War Horse, San Diego; and 14304 Minya Lane, Poway.

07cv418

1  The Transaction was a high rate mortgage (an annual percentage rate of 24.39% with total
2 points and fees payable by plaintiffs at or before closing in excess of $43,000).  Additional terms
3 of the loan included 11 interest only monthly payments of $5,863.64, with a final balloon
4 payment of $435,863,64 on the thirteenth month.  On August 2, 2005, Pritkin Hopkins, Inc.
5 assigned the loan to the Carone Family Trust ("Trust"), James or Gwendolyn Carone, Co-
6 Trustees of the Trust.

7  On December 7, 2005, by separate agreement, the loan was modified ("modification") to
8 remove the security interest in the 15590 Paseo Ajanta, San Diego property.  The modification
9 cost plaintiff Joyce Bland, $10,586.00 to be paid by note secured by a deed of trust against
10 plaintiffs' residence.  The modification note provided for one balloon payment of $10,586.00 on
11 June 6, 2006.

12  On May 16, 2006 – before the modification note was due – defendant James Carone
13 recorded a Notice of Default and Election to Sue Under Deed of Trust relating to the
14 modification note.

15  Plaintiff Joyce Bland filed a Chapter 11 Bankruptcy Petition.  Defendants then sought
16 relief from the automatic bankruptcy stay.  Plaintiffs allege that at the time of the filing of the
17 Petition, plaintiffs were unaware of their claims under TILA and HOEPA.  Plaintiff, as debtor-
18 in-possession has filed a motion to dismiss her pending bankruptcy petition.

19  Plaintiffs contend that on July 23, 2005, they signed but did not receive required
20 Transaction documents, including but not limited to, two copies of the Notice of Right to Cancel
21 containing the date the cancellation period expires.  Plaintiffs state that they also did not receive
22 specific disclosures as required by HOEPA, 15 U.S.C. § 1639(b).
23 Plaintiffs argue that under 15 U.S.C. § 1635 and 15 C.F.R. § 226.15 ("Reg Z"), failure to
24 provide material disclosures extends plaintiffs' right to rescission to three years.

25  Because of these alleged irregularities, on January 12, 2007, plaintiffs allegedly rescinded
26 the Transaction under 15 U.S.C. § 1635 by sending the Rescission Notice as required by
27 Regulation Z to the Carone Family Trust, Pitkin Hopkins, Inc. and James Carone.  Additionally,
28 on January 12, 2007, plaintiff Joyce Bland rescinded the modification by sending the Rescission

Notice to James Carone.

On January 22, 2007, plaintiffs' counsel received a copy of the Notice of Right to Cancel and Home Ownership and Equity Protection Act of 1994, Regulation Z, Section 32 Notice, that plaintiffs signed but allege they never received. Moreover, plaintiffs contend that the Notice of Right to Cancel does not comply with the requirements of TILA in that it does not contain the date the cancellation period expires. (*See* Exh. 3 to Complaint). Finally, plaintiffs assert that the Home Ownership and Equity Protection Act of 1994, Regulation Z, Section 32 Notice does not comply with HOEPA in that the date of acknowledgment of receipt shows that it was not given in a timely manner.

Nevertheless, defendants have sought to immediately foreclose on plaintiffs' residence by obtaining an Order for relief from the stay from the bankruptcy court and filing a Notice of Trustee's Sale Under Deed of Trust with a scheduled sale date of March 20, 2007.

**TRO Legal Standard**

A party seeking injunctive relief under Federal Rule of Civil Procedure 65 must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Roe*, 134 F.3d at 1402 (*quoting United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992)); *accord Sun Microsystems*, 188 F.3d at 1119. "Thus, 'the greater the relative hardship to the moving party, the less probability of success must be shown.'" *Sun Microsystems*, 188 F.3d at 1119 (*quoting National Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984)). Under the second standard, "'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the *status quo* lest one side prevent resolution of the questions or execution of any judgment by altering the *status quo*." *Gilder v. PGA Tour, Inc.*,

936 F.2d 417, 422 (9th Cir. 1991) (*quoting Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (*en banc*)). Furthermore, "serious questions" are substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Id*.

## Discussion

The Truth-in-Lending Act ("TILA"), which is contained in Title I of the Consumer Credit Protection Act, as amended (15 U.S.C. § 1601, et seq.), is intended to assure a meaningful disclosure of credit terms so that consumers can compare more readily various available terms and avoid the uninformed use of credit. 15 U.S.C. § 1601(a). TILA requires that creditors disclose to borrowers specific information, including finance charges, annual percentage rate, and the right to rescind a transaction. *See, e.g.*, 15 U.S.C. §§ 1635, 1638. Regulation Z, 12 C.F.R. Part 226, is issued by the Board of Governors of the Federal Reserve System to implement TILA. *See* 12 C.F.R. § 226.1(a).

### 1. Irreparable Harm

Plaintiffs contend that they will suffer from irreparable harm because their residence is unique and is their home. In other words, if the home is sold in foreclosure, they will not be able to obtain another house that has the unique features of their current home. The Court finds irreparable harm if plaintiffs' residence is sold prior to determining the merits of plaintiffs' claims.

### 2. Probable Success on the Merits

Plaintiffs contend that they have demonstrated violations of TILA and HOEPA which shows probably success on the merits. Defendants argue, however, that whether plaintiffs received the requisite notification forms is hotly contested. Cunningham, in his declaration, states that plaintiffs received the documents in a timely manner which would defeat plaintiffs' claims.

Defendants contend that plaintiffs' cause of action for damages under TILA is subject to a

one-year statute of limitations, 15 U.S.C. § 1640(e)[2], which runs from the time the loan transaction is consummated, and a three-year limitation for rescission under TILA, 15 U.S.C. § 1635(f). The loan was obtained in the summer of 2005 so defendants contend this action is untimely. The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. Plaintiffs were in full possession of all information relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the day the loan papers were signed. Therefore, any damage claim plaintiffs may be making under either TILA or HOEPA is likely time barred.

But here, plaintiffs are seeking rescission, not TILA damages. Rescission of contract is to result in the return of both parties to the status quo ante: each side is to be restored to the property and legal attributes that it enjoyed before the contract was entered and performed. Here, plaintiffs provided a Notice of Rescission and plaintiffs assert that defendants have failed to respond to their notice of rescission. Under 15 U.S.C. § 1640, a creditor may be liable for damages if it fails to respond to the debtor's notice of rescission as required under 15 U.S.C. § 1635. While a debtor normally has three days to rescind the transaction after it has been consummated, the debtor has up to three years to rescind the transaction if the required notice or material disclosures are not delivered. 12 C.F.R. § 226.23(a)(3); see also 15 U.S.C. § 1635(f).

Understandably, the statute of limitations issue is not fully developed by either party in this application and will need to be addressed at the time of the hearing on the application for preliminary injunction.

**3.     Serious Questions**

There are serious questions concerning the statute of limitations and whether plaintiffs did or did not receive the requisite information when their loan closed.

**4.     Balance of Hardships**

Although defendants contend that they have and will continue to suffer significant injury because they are not being repaid on the loan, plaintiffs will lose their home. It is true that

---

[2]     Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

plaintiffs have put themselves in this position by not repaying the loan as they promised but loss of a primary residence is a more significant hardship than lack of timely repayment of a loan. Plaintiffs are facing loss of their real property and primary residence. If plaintiffs prevail on their claims in this case, they face the possibility that, by that time, defendants may have already sold their property. Defendants, on the other hand, have the right to the payment required under their loan contracts with plaintiffs. Balancing defendants' right to proceeds under the loan contract against plaintiffs' potential loss of real property, the Court finds that the balance of hardships tips in plaintiffs' favor.

### 5. Setting of Bond

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, a successful movant for a TRO or preliminary injunction must post security "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Generally, the amount of the bond required prior to issuance of a temporary restraining order (TRO) or preliminary injunction should be sufficient to protect the restrained or enjoined party from loss in the event that future proceedings prove that the injunction issued wrongfully.

Plaintiffs argue that no bond should be required because of the value of the property is sufficient to cover any costs that may arise if the TRO is wrongfully granted. Defendants have not suggested an amount for a bond. On the facts as presented, the Court will require a bond in the amount of $5,000.

### Conclusion

Plaintiffs present a possibility of success on the merits and the loss of their home presents irreparable harm. Similarly, the issues presented are fact and credibility intensive and/or can be determined by the statute of limitation. The balance of hardship tips in plaintiffs' favor. Accordingly, the Court will grant the application for a TRO. The parties have agreed to extend the time for the preliminary injunction hearing so that some discovery may occur.

Based on the foregoing, **IT IS ORDERED** granting plaintiffs' application for temporary restraining order. **IT IS FURTHER ORDERED** that plaintiffs shall post a $5,000.00 bond. **IT**

1  **IS FURTHER ORDERED** setting hearing on plaintiffs' application for preliminary injunction
2  for **Tuesday, April 10, 2007 at 10:00 a.m.  IT IS FURTHER ORDERED** that defendants
3  shall file and serve an opposition to plaintiffs' application for preliminary injunction no later
4  than April 3, 2007.  **IT IS FURTHER ORDERED** that plaintiffs shall file and serve a reply
5  memorandum no later than Aril 6, 2007 at noon.
6       **IT IS SO ORDERED.**
7  DATED:  March 19, 2007

         _____
         M. James Lorenz
         United States District Court Judge

11  COPY TO:
12  HON. RUBEN B. BROOKS
    UNITED STATES MAGISTRATE JUDGE
14  ALL PARTIES/COUNSEL